UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Charles T. Whittington, Linda D. Whittington, | ) | C/A No. 4:12-3167-MGL-KDW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| US Bank National Association, Trustee; Wells Fargo Bank National Association and America's Servicing Company; and Rogers Townsend & Thomas PC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

On November 2, 2012, Plaintiffs Charles T. and Linda D. Whittington ("Plaintiffs" or "Whittingtons"), proceeding pro se, brought this action against Defendants US Bank National Association, Trustee; Wells Fargo Bank National Association and America's Servicing Company;[1] and Rogers Townsend & Thomas PC concerning Defendants' involvement in a foreclosure action filed in the Horry County (South Carolina) Court of Common Pleas.

The following motions are pending and have been referred to the undersigned: Motion to Dismiss filed by the Bank Defendants, ECF No. 18; and Motion to Dismiss by Defendant Rogers Townsend & Thomas PC ("RTT"), ECF No. 16. Plaintiffs filed their Response to the Motions to

---

[1] Plaintiffs refer to Defendants Wells Fargo Bank National Association and America's Servicing Company as one entity ("Wells Fargo Bank/America's Servicing Company") with the same agent for service of process. Compl. at 2-3, ECF No. 1. Plaintiffs note America's Servicing Company is "a Division of Wells Fargo Bank, NA, in Fort Mill, SC." *Id.* ¶ 21. US Bank National Association, Trustee ("USB"); Wells Fargo Bank National Association ("Wells Fargo"), and America's Servicing Company are represented by the same counsel and filed a joint Motion to Dismiss. Except when necessary for context, they are referred to collectively herein as the Bank Defendants. Counsel for the Bank Defendants filed one set of responses to the court's Local Rule 26.01 Interrogatories, for "Defendant Wells Fargo Bank, N.A. d/b/a America's Servicing Company" and generally refers to these two Defendants as "Wells Fargo." ECF No. 20. Counsel filed separate responses to the Local Rule 26.01 Interrogatories for Defendant US Bank National Association.

Dismiss, ECF No. 25, and the Bank Defendants filed a Supplemental Memorandum in Support of Their Motion to Dismiss, ECF No. 30, to which Plaintiffs responded, ECF No. 33. After considering the parties' arguments, the undersigned issues this Report and Recommendation ("Report") recommending[2] the Motions to Dismiss of the Bank Defendants and RTT be granted and this matter be dismissed without prejudice.

I.      Standard of Review

Defendants move to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Motions brought pursuant to Rule 12(b)(1) challenge whether the district court has jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of subject-matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3] The plaintiff bears the burden of proving that subject-matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

---

[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C, which provides for all pretrial proceedings involving litigation by individuals proceeding pro se be referred to a United States Magistrate Judge. Because the motions to dismiss are dispositive, the undersigned enters this Report for the district judge's consideration.

[3] Resolution of jurisdictional questions must occur before deciding whether a plaintiff states a proper cause of action. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, on a motion pursuant to Rule 12(b) (6), if matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *see also Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013) (affirming district court's denial of Rule 12(b)(6) motion, noting that *Twombly* reiterated that a plaintiff "was not required to state [] precise magical words" to plausibly plead claim). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also*

*Tobey*, 706 F.3d at 386 (considering facts of Rule 12(b)(6) motion from plaintiff's vantage point, "with all reasonable inferences drawn in his favor").

II.     Brief Factual Summary

Because Defendants seek to dismiss Plaintiffs' Complaint, the court considers the facts in the light most favorable to Plaintiffs, as set forth in their Complaint, ECF No. 1. Plaintiffs' Complaint centers around Defendants' actions in their request for a modification of a loan and mortgage on their home, located at 647 Bald Eagles Drive in Conway, South Carolina. They submit they were damaged by the denial of their loan-modification request and the foreclosure action on their home, which was filed in November 2009 and remains pending in state court located in Horry County, South Carolina. *U.S. Bank, National Association, as Trustee for Residential Asset Securities Corp. 2006-EMX9 v. Charles T. Whittington; Linda Whittington a/k/a Linda D. Whittington; the United States of America acting by and through its agency the Internal Revenue Service*, 2009-CP-26-10683. *See* Horry Cnty. Public Index, http://publicindex.sccourts.org/horry/publicindex/CaseDetails.aspx?County=26&CourtAgency=26002&Casenum=2009CP2610683&CaseType=V (last visited Apr. 30, 2013).[4]

In their Complaint, Plaintiffs outline communications in applying for a loan modification, indicating they communicated with representatives of America's Servicing Company, the "servicer of their mortgage loan" and a "Division of Wells Fargo." Compl. ¶ 4-5, 11-16, 21. For example, Plaintiffs were told they would not be eligible for a loan modification unless they defaulted on mortgage payments. *Id.* ¶ 5. They provided requested financial documentation several times when requested. *Id.* ¶ 11. When Plaintiffs inquired of the progress of their loan

---

[4] The court can take judicial notice of Plaintiffs' related state-court proceedings. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

modification process, America's Servicing Company's representatives "repeatedly informed" them that "the holdup was the back log of loan modifications[.]"*Id.* ¶ 14.

Plaintiffs were "served with a Lis Pendens" regarding the foreclosure of their home in early November 2009. *Id.* ¶ 7. The Lis Pendens listed Defendant USB, as Trustee; Plaintiffs state they "had no connection" with USB. *Id.* ¶ 9. RTT, a law firm, apparently brought the Horry County foreclosure proceeding on the mortgage and loan associated with Plaintiffs' home. *See id.* ¶ 17. Plaintiffs informed America's Servicing Company's representatives that the foreclosure had been filed although their loan-modification application was still pending. *Id.* ¶ 11. Representatives of America's Servicing Company told Plaintiffs not to worry, that the "Lawyers had jumped the gun," and "assured the Plaintiffs the Lawyers had made a mistake." *Id.* ¶ 15.

"After approximately 15 months of waiting and 28 phone conversations and reassurance that everything was fine, Plaintiffs received [a] letter that they had been denied a loan modification because they did not qualify." *Id.* ¶ 16. Plaintiffs had not been informed that, if they did not obtain a loan modification, they would be "responsible for all past due payments, interest, late fees and penalties incurred as a result of the default." *Id.* Rather, Plaintiffs aver a representative of America's Servicing Company had told Plaintiff Charles Whittington they "could cut their mortgage payment in half and all payments missed would be added to the back of the loan when the process was completed." *Id.*

On October 29, 2012, Plaintiffs received a letter from RTT requesting an amendment to some portion of the state court foreclosure proceeding. *Id.* ¶ 17. Plaintiffs note that in this letter "Defendants admit[] the subject loan was not eligible for modification because the investor does

5

not participate in HMP."[5] *Id.* At the time they filed their Complaint, Plaintiffs had been called into state court three times regarding the foreclosure action, although the court continued the case each time at the request of counsel seeking the foreclosure. *Id.* ¶ 19.[6]

Plaintiffs' Complaint also includes paragraphs about various loan industry issues, including securitization trusts, Real Estate Mortgage Investments Conduits ("REMICS"), assignments of mortgages, so-called "Robo-signers," and Mortgage Electronic Registration Systems, Inc. ("MERS"). *See id.* ¶¶ 21-35. Within this portion of Plaintiffs' Complaint, they arguably raise questions regarding the transfer of the mortgage on their home. *See, e.g.*, *id.* ¶¶ 34-35. Plaintiffs take note of settlements the federal government has reached with some mortgage lenders, including Wells Fargo, regarding some of the mortgage industry issues they outline in their Complaint. *See id.* ¶¶ 40-41.

Plaintiffs claim their damages include having "had their credit ruined, spent countless days and nights worrying about losing their home[,]" and that Plaintiff Charles Whittington spent four days in the hospital with heart problems "because of the stress the Defendants [have] created." *Id.* ¶ 37.

In the section of their Complaint entitled "IV. Relief," Plaintiffs "demand judgment" and reference several "causes of action" against Defendants. *See* Compl. 12-14, ECF No. 1. Although referring to several causes of action by name, Plaintiffs include no detail regarding the causes of

---

[5] Plaintiffs do not reference "HMP" elsewhere in their Complaint, nor do they otherwise identify what sort of loan modification they were seeking. The court notes that the federal Troubled Asset Relief Program ("TARP") included the Making Home Affordable Program, which included a program called the "Home Affordable Modification Program," commonly referred to as "HAMP." *See generally Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, __ F.3d __, ___ 2013 WL 1694549, *__, n.4 (Apr. 19, 2013) (noting no private right of action exists under HAMP).

[6] As of the date this Report was filed, the foreclosure action against Plaintiffs regarding the property at issue remained pending. As discussed in more detail within, the state court entered a Consent Order to Allow Amendment of the Summons/Foreclosure Action on January 29, 2013.

6

action in this section of the Complaint other than to include what damages and injunctive relief sought for each of the causes of action. The "IV. Relief" section of the Complaint provides, in full, as follows:

> IV RELIEF.
> WHEREFORE, Plaintiffs Charles and Linda Whittington demand judgment as follows:
> **On the first cause of action (fraud)**, judgment against Defendant America's Servicing Company for the following relief: 25 million in actual compensatory damages and 25 million dollars in punitive damages.
> **On the second cause of action (false claims)**, judgment against Defendant America's Servicing Company for the following relief: 25 million dollars in actual compensatory damages and 25 million dollars in punitive damages.
> **On the third cause of action (misrepresentation)**, judgment against the Defendant America's Servicing Company for the following relief: 25 million dollars in actual compensatory damages and 25 million dollars in punitive damages.
> **On the first cause of action (fraud)**, judgment against Defendant US Bank National Association, Trustee.
> For the following relief: 100 million dollars in actual compensatory damages and 100 million dollars in punitive damages.
> **On the second cause of action (false claims)**, judgment against Defendant US Bank National Association, Trustee for the following relief: 100 million dollars in actual compensatory damages and 100 million dollars in punitive damages.
> **On the third cause of action (perjury)**, judgment against Defendant US Bank National Association, Trustee for the following relief: 100 million dollars in actual compensatory damages and 100 million dollars in punitive damages.
> **Furthermore**, the Plaintiffs Charles and Linda Whittington demand that the Defendant US Bank National Association dismiss all legal action against the Plaintiffs and they immediately give up any and all claims to their property located at 647 Bald Eagles Dr., Conway SC.
> **On the first cause of action (fraud)**, judgment against Defendant Wells Fargo Bank National Association for the following relief: 100 million dollars in actual compensatory damages and 100 million in punitive damages.
> **On the second cause of action (false claims)**, judgment against Defendant Wells Fargo Bank National Association for the following relief: 100 million dollars in actual compensatory damages and 100 million dollars in punitive damages.
> **On the third cause of action (perjury)**, judgment against Defendant Wells Fargo Bank National Association for the following relief: 100 million dollars in actual compensatory damages and 100 million dollars in punitive damages.
> **Furthermore**, the Plaintiffs Charles and Linda Whittington demand that the Defendant Wells Fargo Bank National Association dismiss all legal action against the Plaintiffs and they immediately give up any and all claims to their property located at 647 Bald Eagles Dr., Conway SC.

>**On the first cause of action (fraud)**, judgment against Defendant Rogers Townsend & Thomas PC Law firm for the following relief: 10 million dollars in actual compensatory damages and 10 million dollars in punitive damages.
>**On the second cause of action (false claims)**, judgment against Defendant Rogers Townsend & Thomas PC Law firm for the following relief: 10 million dollars in actual compensatory damages and 10 million dollars in punitive damages.
>**On the third cause of action (perjury)**, judgment against Defendant Rogers Townsend & Thomas PC Law firm for the following relief: 10 million dollars in actual compensatory damages and 10 million dollars in punitive damages.
>**Furthermore,** the Plaintiffs Charles and Linda Whittington ask the Court to reprimand and punish the law firm as it sees fit for failing to act in a professional manner and for not following the South Carolina Rules of Professional Conduct.
>Other relief, together with the above relief that this Court issue a judgment against all Defendants for Court costs, travel expense and interest and such other relief that is appropriate.

Compl. at 12-14, ECF No. 1.

III.    Defendants' Motions to Dismiss

Both the Bank Defendants and RTT raise these grounds in their respective Motions to Dismiss: (1) this court does not have subject-matter jurisdiction over this matter; and (2) even if the court had jurisdiction, it should abstain from considering this matter because the foreclosure action is a parallel and ongoing state-court proceeding, *see Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  *See* ECF No. 16 (RTT) and ECF No. 18 (Bank Defs.).

Additionally, the Bank Defendants argue this matter is subject to dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure because the claims Plaintiffs bring here properly are raised as compulsory counterclaims in the state-court foreclosure proceeding. ECF No. 18 at 3-6.  The Bank Defendants expand on that argument in a supplement to their Motion to Dismiss because Plaintiffs have now actually brought the same claims as counterclaims in the state-court foreclosure proceeding. *See* Bank Defs.' Suppl. Mem., ECF No. 30 and Whittingtons' "Answers to First Amended Summons" on February 13, 2013, ECF No. 30-1.

RTT also moves to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6), arguing Plaintiffs have not presented sufficient allegations to set forth plausible theories that RTT is liable to Plaintiffs for defrauding them, for submitting a false claim, or for committing perjury. ECF No. 16. RTT also submits Plaintiffs have not, and cannot, set forth a plausible claim for relief based on the South Carolina Rules of Professional Conduct as those professional rules do not create private causes of action against attorneys. *Id.* at 4-5. Further, it submits it is immune from liability to Plaintiffs, who are third parties to its attorney-client relationship with the banks. *Id.* at 5.

A. Defendants' Rule 12(b)(1) Motion: No Subject-matter Jurisdiction

The court first considers the jurisdictional arguments raised by the Bank Defendants and RTT. *See Ex parte McCardle*, 74 U.S. (7 Wall.) at 514. *See* RTT Mem. 1-2, ECF No. 16-1; Bank Defs.' Mem. 6-8, ECF No. 18.

United States district courts are courts of limited subject-matter jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). District courts exercise two types of subject-matter jurisdiction: federal question jurisdiction pursuant to 28 U.S.C. § 1331, and diversity jurisdiction pursuant to 28 U.S.C. § 1332. If the court has jurisdiction pursuant to either of these statutes, it also has the discretion to hear and decide state law claims in conjunction with federal law claims through the exercise of supplemental jurisdiction. 28 U.S.C. § 1367; *see* 28 U.S.C. § 1367(a) (providing courts have supplemental jurisdiction if the state law claims are "so related to claims in the action within such original jurisdiction [federal question or diversity jurisdiction] that they form part of the same case or controversy under Article III of the United States Constitution.").

9

Because federal courts have limited subject-matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." *Id.* To this end, Federal Rule of Civil Procedure 8(a)(1) requires that the complaint provide "a short and plain statement of the grounds for the court's jurisdiction[.]" If, however, the Complaint does not contain "an affirmative pleading of a jurisdictional basis[,] a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Id.* If the court, viewing the allegations in the light most favorable to Plaintiffs, finds insufficient allegations in the pleadings, the court will lack subject-matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). The Fourth Circuit Court of Appeals has counseled that "[a] court is to presume . . . that a case lies *outside* its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (emphasis in original). When a district court lacks subject-matter jurisdiction over an action, the action must be dismissed. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

    a.  No Diversity Jurisdiction

The Bank Defendants and RTT argue the court does not have diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides in part that the court has subject-matter jurisdiction to "all civil actions where the matter in controversy exceeds [] $75,000 and is between—(1) citizens of different States[.]" 28 U.S.C. § 1332(a)(1). Diversity of citizenship must be complete; i.e., the citizenship of all plaintiffs must be diverse from the citizenship of all defendants. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). For purposes of determining the citizenship of a corporation, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state

where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). Plaintiffs bear the burden of proving subject-matter jurisdiction properly exists. *See Evans,* 166 F.3d at 647. The court may consider evidence outside the pleadings on Defendants' jurisdictional motion when material jurisdictional facts are not in dispute and the moving parties are entitled to judgment as a matter of law. *Id.*

Here, Plaintiffs reside at 647 Bald Eagle Drive, Conway, Horry County, South Carolina and are citizens of South Carolina. *See* Compl. at 2. RTT is a professional corporation incorporated under the laws of the State of South Carolina and its principal place of business is located within South Carolina. *See* Certification of RTT counsel and shareholder Robert P. Wood ¶¶ 2-3, ECF No. 15; *see* Compl. 3 (listing a South Carolina address for Defendant RTT).

Although Plaintiffs oppose Defendants' Motions to Dismiss, their memorandum in opposition does not dispute this portion of Defendants' jurisdictional arguments. *See generally* Pls.' Resp., ECF No. 25. Plaintiffs' Complaint and Answers to Rule 26.01 Interrogatories indicate that they reside in Horry County, South Carolina and provide South Carolina address information for RTT. *See* Compl. at 2-3, ECF No. 1; Pls.' Answers to Rule 26.01 Interrogs. 2, ECF No. 3.

Because both Plaintiffs and one Defendant are South Carolina citizens, complete diversity does not exist, and the court does not have subject-matter jurisdiction based upon the diversity jurisdiction found in 28 U.S.C. § 1332.

    b. No Federal Question Jurisdiction

As the court lacks jurisdiction under 28 U.S.C. § 1332, in order to proceed with their action, Plaintiffs must show that the court has jurisdictional authority pursuant to 28 U.S.C. § 1331, often referred to as federal question jurisdiction. 28 U.S.C. § 1331 ("The district courts

11

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Although Plaintiffs bear the burden of establishing jurisdiction, the court is mindful of Plaintiffs' pro se status and construes Plaintiffs' pleadings broadly. Nonetheless, lenient interpretation of claims raised in a pro se plaintiff's pleadings does not permit the court to ignore the pleadings' clear failure to raise claims cognizable in federal court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990).

Plaintiffs' purported claims include fraud, false claims, misrepresentations and perjury. *See* Compl. 12-13. In considering whether federal question jurisdiction exists, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936).

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton,* 133 S. Ct. 1059, 1064 (2013) (*quoting Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). The Supreme Court has stated that federal jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313 (2005). The Court has noted that its decisions have not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Id.* at 314. "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* The Supreme Court recently reiterated that finding federal question jurisdiction exists for such embedded federal issues will

12

be appropriate only in "a 'special and small category' of cases." *Gunn*, 133 S. Ct. at 1064 (*quoting Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

Accordingly, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. Plaintiffs' Complaint does not expressly allege claims against a Defendant based on alleged violations of federal law. Nor does the Complaint include any statement regarding the basis for federal jurisdiction. Accordingly, the court could appropriately grant Defendants' Rule 12(b)(1) Motions without further consideration.

Nonetheless, both Defendants reference Plaintiffs' citation to several federal statutes in their responses to Local Civil Rule 26.01 Interrogatories, explaining that those statutes do not set forth federal question jurisdiction either. Bank Defs.' Mem. 7-8, ECF No. 18; RTT's Mem. 1, 3-4, ECF No. 16-1. In those responses, Plaintiffs generally cite to several federal statutes in listing each of their claims and indicating whether they "should be tried jury or non jury and why." ECF No. 3. This portion of Plaintiffs' responses provides as follows:

> **Fraud** 18 U.S.C. § 1028 (a) (c) (7). This should be tried jury. Plaintiff's [sic] rights have been violated.
> **False Claims** 31 U.S.C. § 3729 (a) (1) (2) (A) (B). This should be tried jury. Plaintiff's [sic] rights have been violated.
> **Perjury** 8 U.S.C. § 1621 (1) (2). This should be tried jury. Plaintiff's [sic] rights have been violated.
> . . .
> **Truth and Lending** Act Section 131 of the Truth and Lending Act 15 U.S.C. § 1641 that requires the assignee of a mortgage to notify consumer borrower that his loan has been transferred. This should be tried by jury.
>
> **Violations of Plaintiffs' 14th Amendment Rights.** This should be tried by jury.

ECF No. 3 at 1-2.

13

In responding to Defendants' Motions to Dismiss, Plaintiffs generally argue that the court should exercise federal jurisdiction because "Federal crimes-federal violations = Federal Court." Pls.' Resp. 27, ECF No. 25. Plaintiffs "apologize for any misunderstanding [of the law]," but submit that the court should consider what they have presented and not grant Defendants' Motions because that would "permit Defendants and their attorneys to escape possible prosecution, sanctions and monetary awards that will be awarded against them for their fraudulent actions." *Id.* at 27.

Even if the court considers the statutes referenced in Plaintiffs' interrogatory responses, the court agrees with Defendants that the court does not have federal question jurisdiction. Plaintiffs cite to 18 U.S.C. § 1028 in support of their fraud claim; however, this is a criminal statute that concerns the production, transfer and possession of false identification documents such as passports and social security cards. Similarly inapplicable is 8 U.S.C. § 1621, which Plaintiffs cite in support of their perjury claim. That statute deals with the eligibility of aliens for state and local public benefit programs. Plaintiffs also cite to 31 U.S.C. § 3729 as support for their causes of action for false claims. This statute deals with false claims against the United States government, establishing civil penalties for the same.[7]

Plaintiffs also cite to 15 U.S.C. § 1641, a portion of the Truth in Lending Act ("TILA"), noting that the statute "requires the assignee of a mortgage to notify the consumer borrower that his loan has been transferred." Pls.' Answers to Rule 26.01 Interrogs. 2, ECF No. 3. Neither Defendant addressed Plaintiffs' citation to TILA in arguing no federal-question jurisdiction

---

[7] In their Response, Plaintiffs concede the inapplicability of 18 U.S.C. § 3729 to this case. Pls.' Resp. 28, ECF No. 25. Plaintiffs ask that the court "remove the 18 U.S.C. § 3729 False Claims" from their case, indicating they plan to "pursue this action within the proper framework of said law." *Id.* In the event district court determines Plaintiffs' case survives Defendants' Motions to Dismiss, it is recommended that Plaintiffs be permitted to remove their false claims allegations.

exists. Nonetheless, pursuant to the court's own duty to consider whether subject-matter jurisdiction exists, the court considers whether Plaintiffs' reference to that federal statute creates subject-matter jurisdiction and finds it does not. *See McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 211 (1st Cir. 2012) (finding no federal question jurisdiction despite complaint's "passing reference to the federal TILA" when her claims were all styled as state-law claims).

A federal court is required sua sponte to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *In re Bulldog Trucking, Inc*., 147 F.3d 347, 352 (4th Cir. 1998); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Although 15 U.S.C. § 1641 does provide for private rights of action by consumers in certain specific situations, Plaintiffs' Complaint does not focus on TILA other than to submit the Bank Defendants never informed them of any mortgage transfer in "direct violation of the Truth and [sic] Lending Law concerning the transfer of mortgages." Pls.' Compl. ¶ 35. The undersigned submits that Plaintiffs' general references to TILA do not confer subject-matter jurisdiction on the court. *Cf. Weller*, 901 F.2d at 391 ("Federal jurisdiction may not be premised on the mere citation of federal statutes."). Even if Plaintiffs' Complaint were interpreted to contain an express TILA cause of action, nothing in Plaintiffs' pleadings would cause the entire litigation to be part of the "same case or controversy" as the TILA claim to have the court exercise supplemental jurisdiction over the entire matter. *See* 28 U.S.C. § 1367.[8]

---

[8] In addition, as detailed within, the undersigned recommends in the alternative that the court abstain from exercising jurisdiction here because Plaintiffs have raised the same claims as defenses and counterclaims to the ongoing state-court foreclosure proceedings involving these same parties. Plaintiffs' state-court pleadings also refer to TILA and whether Defendants complied with TILA in informing them the mortgage on their property had been assigned. *See* Whittingtons' Answers to Am. Compl. in foreclosure proceeding, No. 09-CP-26-10683, ¶ 10; ECF No. 15-1 at page 43 of 108 ("[The Whittingtons] deny the allegations because they have no

Finally, Plaintiffs' general assertion in responding to Interrogatories regarding "Violations of [their] 14th Amendment Rights" does not confer the court with federal question jurisdiction. Nowhere in Plaintiffs' Complaint do they allege violation of their constitutional rights, nor does the court's review of Plaintiffs' pleadings suggest constitutional violations. *See Weller*, 901 F.2d at 391.

In Plaintiffs' "Answer to Deny Supplemental Memorandum in Support of Motion to Dismiss," ECF No. 33, Plaintiffs offer several arguments in purported support of the court's federal question jurisdiction. For example, they submit that their causes of action include "perjury, fraud, misrepresentation, violations under the legal term RICO and violations of the Plaintiffs' 14th amendment rights in regards to due process." ECF No. 33 at 4. Further, they argue that "[t]he important factor in this case surrounds federal law violations in the banking industry and since the banks are regulated by the arm of the federal laws concerning FDIC[,] the Federal Court should hear this case." *Id.* They continue: "The FDIC was created in 1933 to maintain public confidence and encourage stability in the financial system through the promotion of sound banking practices." *Id.* They submit their case should be heard in this court because "[w]hat has happened in this case is in no way sound banking practices. *Id.* at 5. They again submit that "Federal Crimes, Federal Violations should be adjudged in Federal Court." *Id.*

Even if the court considers these statements, which were provided well after Plaintiffs filed their Complaint, they do not transform this case to one within the court's federal question jurisdiction. It is true that the FDIC regulates banking practices. It is also true that violation of federal criminal statutes and regulations are appropriately considered in this court. However,

---

mortgage contract with [foreclosure plaintiff USB]. When they, whoever [USB] is referring to that transferred [the Whittington's] mortgage did so illegally and was a direct violation of the Truth and Lending Laws. Anytime a consumers' mortgage is transferred you must notify the consumer within 30 days to such a transfer. . . .").

16

Plaintiffs' Complaint is civil, not criminal. Indeed Plaintiffs cannot bring criminal cases themselves. Plaintiffs have not established a "necessary and substantial" federal question. *See Gunn*, 133 S. Ct. at 1065. Further, Plaintiffs' claims are intertwined with the pending state-court foreclosure proceeding. States have "strong interests in assuring the marketability of property within its borders[ ] and in providing a procedure for peaceful resolution of disputes about the possession of that property." *See Shaffer v. Heitner*, 433 U.S. 186, 207-208 (1977) (footnote omitted). It cannot be said that resolution of issues raised here in this court could take place "without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065.

The "well-pleaded complaint rule" directs the court to look at a plaintiff's *complaint* in determining whether subject-matter jurisdiction exists. Looking to the allegations and causes of action asserted in the present action, it is clear that no violations of federal law are sufficiently implicated or alleged such as to trigger federal question jurisdiction. When considering the issue of whether a case is one "arising under the Constitution . . ." or, in other words, "whether federal question jurisdiction is present, a federal court is not bound by the parties' characterization of a case." *Hart v. Piedmont Med*., C/A No. 0:13-261-JFA-BM, 2013 WL 1184253, *4 (D.S.C. Feb. 21, 2003) (internal citations omitted). The court is authorized to disregard such characterizations to avoid "unjust manipulation . . . of its jurisdiction." *See id.* (*citing Lyon v. Centimark Corp.*, 805 F. Supp. 333, 334-35 (E.D.N.C. 1992) and *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908)); adopted in 2013 WL 1187002 (Mar. 20, 2013).

Because Plaintiffs have not pleaded any facts or claims that trigger the subject-matter jurisdiction of this court, the undersigned recommends Defendants' Rule 12(b)(1) Motions be granted and Plaintiffs' Complaint be dismissed without prejudice.

B. Abstention

Defendants alternatively submit the court should dismiss Plaintiffs' Complaint based on principles set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny—commonly referred to as the *Colorado River* Doctrine. Like other abstention doctrines,[9] the *Colorado River* Doctrine and other abstention doctrines concern the discretion of the federal courts to refrain from exercising **properly established jurisdiction** when issues of federalism and wise judicial administration suggest that a state court is a better forum for adjudication. Because the undersigned finds the court lacks subject-matter jurisdiction, dismissal pursuant to doctrines of abstention does not apply. However, should the district court determine subject-matter jurisdiction exists, the undersigned is of the opinion that abstention as set forth in *Younger v. Harris*, 401 U.S. 37 (1971), would be appropriate.[10] Although Defendants did not discuss *Younger* abstention in their Motions, the court may raise abstention sua sponte. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976).

---

[9] The abstention doctrines are typically discussed in terms of four categories, utilizing their originating cases as a shorthand reference: *R.R. Comm'n. of Tex. v. Pullman Co*., 312 U.S. 496 (1941) ("*Pullman*" abstention); *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) and *La. Power & Light Co. v. Thibodeaux,* 360 U.S. 25 (1959) ("*Burford/Thibodeaux*" abstention); *Colorado River, 424 U.S. 800;* and *Younger v. Harris,* 401 U.S. 37 (1971) ("*Younger*" abstention).

[10] Pursuant to the doctrine established in *Colorado River*, as amended in *Moses Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1 (1983), abstention may be appropriate when there are on-going parallel proceedings in state and federal court. In determining whether two actions are parallel, the court should determine whether substantially the same parties are attempting to litigate the same issues in different forums. *New Beckley Min. Corp. v. Int'l Union, United Mine Works of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). The undersigned is not convinced this proceeding and the foreclosure action are sufficiently "parallel" for purposes of abstention pursuant to *Colorado River* abstention. Although RTT is involved in the foreclosure proceedings in its capacity as counsel, it is not a litigant in that action as it is in the instant action. *See Sain v. HSBC Mortg. Servs., Inc.*, C.A. No. 4:08-2856-TLW-TER, 2009 WL 2858993 (D.S.C. Aug. 28, 2009) (declining to abstain from exercising jurisdiction based on *Colorado River* Doctrine because law firm was not party in foreclosure proceeding).

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court should not interfere with ongoing state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster,* 75 F.3d 881, 903 (4th Cir. 1996). The Supreme Court has extended the *Younger* doctrine to apply to "'noncriminal judicial proceedings when important state interests are involved.'" *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351 (4th Cir. 2005) (*quoting Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)). From *Younger* and its progeny, the United States Court of Appeals for the Fourth Circuit has established that abstention is appropriate when: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) (*citing Middlesex Cnty. Ethics Comm'n*, 457 U.S. at 432).

In the case at bar, there is an ongoing state judicial proceeding. Regarding the second prong of the test, there is undoubtedly an important state interest in adjudicating foreclosure matters pertaining to real property located within a state. *See Shaffer*, 433 U.S. at 207-08 (recognizing a state's "strong interests in assuring the marketability of property within its borders[ ] and in providing a procedure for peaceful resolution of disputes about the possession of that property") (footnote omitted); *see also Sergeon v. Home Loan Ctr., Inc.*, No. 3:09-CV-01113-J-32JBT, 2010 WL 5662930 (collecting cases applying *Younger* abstention in light of a pending state foreclosure proceeding); as cited in *Dennis v. HSBC Mortg. Servs., Inc.*, C/A No. 0:10-2693-MJP-PJG, 2011 WL 3876916 (D.S.C. Aug.11, 2011), adopted in 2011 WL 3876909 (D.S.C. Aug.31, 2011). In *Dennis*, the court found abstention under *Younger* or under *Colorado River* appropriate because there was an ongoing state foreclosure proceeding pending. *See also*

*Toney v. LaSalle Bank Nat'l Assoc.*, 2012 WL 4378574, Civil Action No. 3:11-1686-MBS-JRM (D.S.C. Sept. 25, 2012) (dismissing on res judicata grounds; acknowledging alternative recommendation on *Younger* abstention but not ruling on that ground). Regarding the third prong, the undersigned notes Plaintiffs have already presented many of the same issues raised here in responding to the foreclosure action. As discussed above, Plaintiffs have not raised federal claims before this court. Nonetheless, the undersigned is aware of no reason Plaintiffs could not pursue matters raised here in state proceedings.

Accordingly, the undersigned alternatively recommends the court exercise abstention, *see Younger*, 401 U.S. 37, and dismiss Plaintiffs' Complaint without prejudice.[11]

IV.     Conclusion

For the foregoing reasons, it is recommended that the Motions to Dismiss of the Bank Defendants and RTT, ECF Nos. 16, 18, be granted and this case be dismissed without prejudice.

IT IS SO RECOMMENDED.

April 30, 2013                                                                       Kaymani D. West
Florence, South Carolina                                                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[11] Based on this recommendation, the court does not further consider Defendants' arguments.